UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BYRON CARO                                          CIVIL ACTION

VERSUS                                              NUMBER: 05-1473

JO ANNE B. BARNHART,                                SECTION: "S"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION


### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based on disability.  (Rec. docs. 10, 11).

Byron Caro, plaintiff herein, filed the subject applications for DIB and SSI benefits on February 5, 2002 alleging disability as of December 15, 2001.  (Tr. pp. 75-77).[1]  In a Disability Report

----

[1]/ Plaintiff's application for SSI benefits is not included in the administrative record submitted by the Commissioner but it is identified on the record's list of exhibits.  (Tr. p. 2).

completed by plaintiff on February 5, 2002, he identified a heart condition and the loss of use of the left arm and hand as the conditions resulting in his inability to work.  (Tr. p. 82).

Plaintiff's request for Social Security benefits was denied at the initial level of the Commissioner's administrative review process on April 23, 2002. (Tr. pp. 47-51).  Pursuant to plaintiff's request, a hearing de novo before an Administrative Law Judge ("ALJ") went forward on May 30, 2003 at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. pp. 52, 342-369).  On August 18, 2003, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. pp. 34-41).  On Appeals Council ("AC") review, that tribunal remanded the matter back to the ALJ for further development, consideration, and clarification.  (Tr. pp. 44-46).

Following the remand, a second hearing was held by an ALJ on October 27, 2004 at which plaintiff, who was again represented by counsel, and another VE appeared and testified.  (Tr. pp. 370-396).  On December 8, 2004, the ALJ issued a written decision in which she concluded that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. pp. 18-28).  The AC subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. pp. 5-7).  It is from that unfavorable decision that the plaintiff

seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his motion for summary judgment/remand, plaintiff frames the issues for judicial review as follows:

1.  [t]he ALJ erred in failing to obtain evidence from a medical expert.

2.  [t]he ALJ erred in failing to credit the vocational expert's testimony.

3.  [t]he ALJ erred in relying on testimony by the vocational expert which is in conflict with the *Dictionary of Occupational Titles* and the *Classification of Jobs*, 4th Edition.

(Rec. doc. 10, p. 8).

Relevant to the issues to be decided by the Court are the following findings made by the ALJ:

1.  [t]he claimant met the disability status requirements of the Act as of the alleged onset date.  Claimant continued to meet them through June 30, 2004.

2.  [c]laimant has not engaged in substantial gainful activity since the alleged onset date.

3.  [c]laimant has [a] heart condition and is status post stroke in 1997 with the loss of use of the left upper extremity which are severe impairments within the meaning of the Act, regulations, Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p.

4.  [c]laimant's impairments considered both singly or in combination, do not meet or equal the criteria of any impairment in the Listing of Impairments of Appendix I, Subpart P, Regulations No. 4 including 4.06 which was specifically considered both in decision application and as a potential basis for medical equivalency.

5.  [c]laimant's allegations of disabling, limitations and inability to work are not substantiated by objective

3

diagnostic, clinical and laboratory evidence.  SSR 96-7p.

6.  [t]he claimant is a thirty-three year old male with a high school education.

7.  [b]ased upon the credited testimony regarding specific functional limitations taken in context of with treating source evidence, claimant has the following residual functional limitations: lift twenty-five pounds occasionally and ten to fifteen pounds frequently; stand three to four hours at a time, walk one and one-half blocks, sit twenty to thirty minutes then requires a position adjustment, has difficulty reaching overhead using the left upper extremity, has difficulty pushing/pulling with the left hand, fine acuity, gross manipulation deficit of the left hand and a short-term memory deficit.

8.  [b]ased upon the credited vocational testimony, claimant's functional capacity and restriction precludes him from doing his past relevant work as a mechanic (light-medium, semi-skilled, SVP 4), delivery driver (medium, unskilled, SVP 3), and welder/fitter (heavy-medium, semi-skilled, SVP 4).

9.  [b]ased upon credited vocational testimony, claimant's functional limitations, age, education and work experience, there are a significant number of jobs in the state and national economies which claimant is capable of performing. Such jobs include: receptionist, interviewer, usher/lobby attendant and miscellaneous attendant.

10. [c]laimant's allegations of treatment frequency are reported by treating source records.

11. [t]he claimant has not been under a "disability" as defined in the Social Security Act at any relevant time through the date of this decision.

(Tr. pp. 27-28).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with

4

relevant legal standards.  <u>Anthony v. Sullivan</u>, 954 F.2d 289, 292 (5th Cir. 1992); <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1021 (5th Cir. 1990); <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  42 U.S.C. §405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 91 S.Ct. 1420 (1971).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues <u>de</u> <u>novo</u>, nor may it substitute its judgment for that of the Commissioner.  <u>Cook v. Heckler</u>, 750 F.2d 391, 392 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve, not the courts. <u>Patton v. Schweiker</u>, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act.  <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A).  Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled.  Harrell, 862 F.2d at 475.  In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

    1.  an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

    2.  an individual who does not have a "severe impairment" will not be found to be disabled.

    3.  an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

    4.  if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

    5.  if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that

he has done in the past.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987).  If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist.  <u>Fraga</u>, 810 F.2d at 1304 (citing <u>Lawler v. Heckler</u>, 761 F.2d 195, 198 (5th Cir. 1985)).   Once  the  Commissioner  demonstrates  that  the individual can perform other work, the burden then shifts back to the claimant to rebut that finding.  <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir. 1988); <u>Fraga</u>, 810 F.2d at 1302.

At the time of the administrative hearing held on October 27, 2004, plaintiff was thirty-three years of age, possessed a high school diploma, and had attended several semesters at Delgado.  In answer  to  the  ALJ's  inquiry,  plaintiff  identified  his  medical problems as a stroke in 1997 that was preceded by heart surgery in 1996 and the subsequent rupture of his spleen.  Symptoms resulting from  those  conditions  included  lower  back  pain  that  was  treated with a heating pad, right upper shoulder pain, and a slight limp on the left side.  Plaintiff estimated that he could lift a maximum of twenty-five pounds and carry ten to fifteen pounds; that he could stand for three to four hours at a time; that he could walk for up to one and one-half blocks without stopping; and, that he could sit for  only  twenty  to  thirty  minutes  before  experiencing  pain  and having to shift positions.  Plaintiff could push with his left hand

7

but had problems reaching overhead and with fine manipulation in that extremity.   Use of the right hand and arm was unaffected. Plaintiff also testified that his limp caused him to stumble or trip four to five times per day and that he suffered from short-term memory problems.  He lived with his mother and step-father and reportedly performed no household chores other than to make his bed.  (Tr. pp. 370-385).

Patricia Ehlinger, a VE, was next to take the stand.  She first classified the exertional and skill demands of plaintiff's past relevant work as a mechanic, delivery driver, and welder/fitter.   The VE was then directed to the opinions of Dr. Sheldon Hersh, a consultative evaluator, to the effect that a job where a workplace injury could occur was contraindicated because of plaintiff being on Coumadin and plaintiff's difficulty in using his left hand, standing, walking, climbing, crouching, balancing, and crawling limited him to some unspecified extent.  Faced with those limitations, the VE testified that plaintiff could still perform sedentary to light-level work because Dr. Hersch was not specific as to any standing or walking restrictions.  Due to the deficits in the use of his left hand, the VE testified that plaintiff would be unable to perform his past relevant work.   However, in Ms. Ehlinger's opinion, plaintiff would still be able to function as a receptionist/information clerk, an interviewer, or a customer service representative with significant numbers of such jobs

existing in the state and national economies.  (Tr. pp. 385-388).

The ALJ then directed the VE to the findings of a Residual Functional Capacity ("RFC") assessment performed by an Administration medical consultant on April 9, 2002 on the basis of reviewing plaintiff's file alone. According to that RFC assessment, plaintiff was felt to be capable of lifting twenty pounds occasionally and ten pounds frequently; of standing/walking two hours per four to five hour workday; had a push/pull deficit in the left upper and lower extremities; of occasionally using ramps/stairs and other postural maneuvers but never using a ladder/rope/scaffold; of having various manipulative limitations in the left upper extremity; and, of work away from hazards such as machinery and heights.  Faced with the foregoing limitations, the VE testified that plaintiff would not be capable of performing his past relevant work because of the deficits to his left upper extremity.  However, in the VE's opinion, plaintiff would still be able to perform the jobs she had previously identified.  (Tr. pp. 388-390).

The ALJ then posed yet another hypothetical question to the VE which assumed an individual of plaintiff's age, education, and work experience who had the limitations plaintiff testified to at the administrative hearing.  In answer thereto, the VE testified that the described individual could still perform the jobs she had previously identified with the exception of the customer service

9

representative position due to problems with short term memory.  In place of the latter position, the VE also believed that the described individual could function as a usher/lobby attendant or miscellaneous entertainment attendant.  Upon being questioned by his attorney, plaintiff testified to being seen by his doctor once per month for bloodwork and twice per month for callous removal. In answer to counsel's inquiry, the VE testified that doctors' appointments in excess of one per month would pose a problem with employers. Plaintiff then testified that his podiatric problems were possibly susceptible of resolution through surgery, thus obviating the need for monthly callous debridements. (Tr. pp. 390-396).

As noted earlier, plaintiff challenges the ALJ's decision to deny Social Security benefits on three grounds.  In the second of those, plaintiff alleges that the ALJ erred in failing to properly credit the VE's testimony regarding plaintiff's employability if he was required to attend scheduled doctors' appointments on a frequent basis.  For the reasons that follow, the Court finds merit in that assertion and will therefore recommend that plaintiff's case be remanded to the Commissioner for an award of benefits.

At the administrative hearing held on October 27, 2004, the following exchange occurred:

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q.   Assuming Mr. Caro has to miss at least two times up
     to there (sic) times a month for medical visits for

the rest of his life, are there any jobs that he would be able perform?

A.   <u>The rule of thumb is one day a month is a generally tolerated absence and so if you're looking at two to three I think that would create a problem with</u> (INAUDBILE) <u>employment any employment</u>.

ATTY:    Thank you.  That's the only question I have, Your Honor.

RE-EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q.   How often do you go for your blood work?

A.   Sometimes twice a month.

Q.   Sometimes twice a month.

A.   Sometimes twice a month, sometimes just once a month.

Q.   So I can assume that this callus (sic) is going to be taken care of at some time?

A.   I hope to have it removed soon, taken care of, whether it requires surgery or by them cutting on it like they're doing.

ALJ: Okay.  All right, I don't have any other questions. Okay, we'll conclude.

(The hearing closed on October 27, 2004.).

                              (Tr.  pp.  395-396)(emphasis added).

In her written opinion of December 8, 2004 denying plaintiff's request for Social Security benefits, the ALJ summarized the foregoing exchange as follows:

Counsel asked the vocational expert to assume that the claimant has to miss work two to three times a month for treatment.  The assumption was based upon claimant's representation that the Coumadin levels taken one to two times a month and he sees a doctor once a month and every

11

two weeks for callous removal.  <u>The</u> <u>vocational</u> <u>expert</u> <u>said</u> <u>a</u> <u>once</u> <u>a</u> <u>month</u> <u>absence</u> <u>is</u> <u>standard</u> <u>and</u> <u>acceptable</u> <u>and</u> <u>twice</u> <u>a</u> <u>month</u> <u>is</u> <u>sometimes</u> <u>okay</u>.

(Tr. p. 26)(emphasis added).

The medical records admitted into the administrative proceedings below indicate that plaintiff was seen at the Medical Center of Louisiana at New Orleans' ("MCLNO") Anticoagulation Management Center ("AMC") on two occasions in April of 2002, two occasions in June of 2002, and three separate occasions in August of 2002.  (Tr. pp. 247, 244-246, 248, 242-243, 240-241, 237-238, 235-236, 233-234).  He was seen again at AMC on October 21, 2002 and at the MCLNO Out-Patient Department for allergies and depression the following day.  (Tr. pp. 266, 264).  Plaintiff subsequently underwent an echocardiograph at MCLNO on March 18, 2003 and was seen for monitoring at AMC on March 24, 2003.  (Tr. pp. 258-259, 257).  Plaintiff's Coumadin levels were monitored by AMC personnel on April 7, 2003 and April 29, 2003.  (Tr. pp. 255-256, 254).  He had three separate visits to MCLNO in March of 2004, two to the AMC and another to the Podiatry and Out-Patient Departments on March 11, 2004.  (Tr. pp. 337-341, 335-336, 333-334).  In the months that followed, plaintiff was seen at MCLNO twice in April of 2004, twice in June of 2004, twice in August of 2004, and four times in September of 2004 for either monitoring of his anticoagulation drugs levels or callous debridements.  (Tr. pp. 325-329, 322-324, 313-317, 312, 301-306, 300, 295-299, 300, 290-

12

294).

As a result of a congenital defect, plaintiff underwent an aortic valve replacement in 1997 at a fairly young age.  He was then placed on Coumadin to manage his cardiac condition.  In anticipation of a subsequent spleenectomy, plaintiff was taken off of Coumadin and then suffered a stroke with resulting residual paralysis in his left hand and arm and a limp in the left leg.  The left lower extremity deficit has apparently caused plaintiff to develop a callous which requires periodic debridements.  Although there was some mention at the administrative hearing that surgery could alleviate that problem, there is no indication if that has ever occurred.  In remanding plaintiff's case back to the ALJ on January 9, 2004, the AC had directed the ALJ to "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's impairments ...".  (Tr. p. 46).  Had a medical expert been called to testify at the October 27, 2004 administrative hearing as directed, he or she could have offered opinions on whether plaintiff's foot problem was susceptible of corrective surgery and whether periodic management of his Coumadin levels was necessary for the remainder of his life.  Even the Administration's consultative examiner, who is presumably of a conservative nature, opined that "[w]ork requiring standing, walking, climbing, crouching, balancing, crawling or climbing will be difficult because of the neurological problem in ... [plaintiff's] left leg."

(Tr. p. 220).   Contrary to the ALJ's characterization, the VE testified that an individual who had to attend two or more doctors' appointments per month for the rest of his life would be unable to maintain employment.   Because that is the reality of plaintiff's medical situation, it will be recommended that his case be remanded to the Commissioner for an award of Social Security benefits.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the plaintiff's case be remanded to the Commissioner for an award of Social Security benefits.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this 20th day of ____June____, 2006.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

14